UNITED STATES of America, Appellee,

v.

Serena Denise NUNN, Appellant.

No. 90–5230.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1991.

Decided July 23, 1991.

Barry V. Voss, Minneapolis, Minn., for appellant.

Jon M. Hopeman (Jerome G. Arnold, Jon M. Hopeman and Denise Reilly, on brief), Minneapolis, Minn., for appellee.

Before FAGG and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Serena Denise Nunn appeals from her convictions and sentences following a lengthy jury trial involving five other co-conspirators. Nunn was convicted of aiding and abetting the attempt to possess with intent to distribute twenty kilograms of cocaine on May 17, 1989, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988) and 18 U.S.C. § 2 (1988) (count 2); of possession with intent to distribute 4 grams of cocaine base and 6.5 grams of cocaine on February 1, 1989, in violation of 21 U.S.C. § 841(a)(1) (count 12); and of conspiracy from 1984 to May 18, 1989, to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1988) (count 32). Nunn was sentenced to three concurrent 188-month terms of imprisonment. On appeal, she argues that the district court improperly received into evidence a taped telephone conversation, that the evidence was insufficient to support her convictions, and that the district court erred at sentencing in calculating her base offense level. We affirm.

## I. BACKGROUND

Serena Nunn's convictions stem from her participation in a far-flung conspiracy to distribute drugs in the Twin Cities. The conspiracy, headed by Ralph "Plukey" Duke, involved a host of people, many of them related to Duke or to each other. At the time of her arrest, for instance, Serena Nunn was the girlfriend of Duke's son, Ralph Lamont Nunn (Monte Nunn). Serena's mother, Shirley Billingsley, was also arrested for her involvement in the conspiracy, as were Serena's sister, Charlita Nunn, her cousins, Ronald Nunn and James Eric Nunn, and her uncle, James Nunn.

The government infiltrated the conspiracy through a reverse-sting operation using the efforts of Andrew Chambers, an undercover agent of the Drug Enforcement Administration. After a series of meetings, Chambers arranged the sale of twenty kilograms of cocaine to Monte Nunn on May 17, 1989. Given her presence at several of the meetings between Monte Nunn and Chambers and evidence of her involvement in the conspiracy, Serena was convicted of aiding and abetting the attempt to complete this transaction (count 2).

Serena's further involvement in the conspiracy was varied. For instance, wiretaps on two phones at 426 24th Avenue North in Minneapolis, the house Monte Nunn shared with his mother Doris Admon, produced several conversations, which were played to the jury, revealing that Serena took and

relayed messages concerning drug transactions, made calls to members of the conspiracy demanding payment for drugs, made deliveries, and counted the proceeds from drug sales. The fruits of two search warrants also implicated Serena in the conspiracy. Pursuant to the first, executed on February 1, 1989, at the house Serena shared with her mother at 1414 Queen Avenue North in Minneapolis, officers found, among other items, a cardboard box containing cocaine and two letters addressed to Serena. While she was not present during the execution of the warrant, Serena was convicted of possessing this cocaine (count 12).

Serena was present at the execution of a second warrant, for the house Monte Nunn shared with his mother. The executing officers found her and more than $18,000 in cash in Monte Nunn's bedroom; Serena denied knowing either Monte Nunn or about the money. Serena was also observed driving Doris Admon to the Minneapolis airport on April 6, 1989, where Admon boarded a flight to Los Angeles. There, Admon was stopped by airport agents who seized about $34,000 in cash from her person. Together, these instances form the basis for Serena's convictions.

## II.  DISCUSSION

### A.  Admission of the Tape Recording

■ Nunn objects to the district court's admission of Exhibit 246, a recording of a conversation she had on March 4, 1989, with Kevin Allen Walker, an unnamed, unindicted co-conspirator. Walker, a well-known, street-level drug dealer in St. Paul who bought cocaine from Plukey Duke, was arrested on November 2, 1988, in possession of forty-five ounces of cocaine. He eventually entered a plea of guilty to possessing this amount. His conversation with Serena Nunn—which she initiated—occurred after he had entered the plea but while he was awaiting sentencing.

The portion of the conversation played to the jury begins with Walker complaining about returning to prison for the fourth time, to which Serena replies that someone must have informed on him. After then

discussing the increasing number of drug-related arrests, Serena suggests to Walker that informants would be less of a problem if they were dealt with more severely.

> [Nunn]: ... see the thing with it in Minnesota is, you know, people don't never kill the snitches here.
>
> [Walker]: Yeah.
>
> [Nunn]: You start ... killing [them] ... peoples gonna stop talkin.
>
> [Walker]: Yeah, yeah.
>
> [Nunn]: Because in Chicago and Detroit, they don't worry about nobody ... snitchin on them. Cause they know their ... life is at stake.
>
> ....
>
> [Y]ou let some of [them] come up dead, they'll be thinking second about, you know?

Transcript of Exhibit 246, Appellant's Addendum at 8. The government argues that this conversation was an implicit—but clear—threat to Walker about what could happen to him should he turn against the conspirators.

On appeal, Nunn renews the arguments she made to the district court. First, she argues that the conversation is irrelevant as nothing more than "a general conversation about what should happen to informants." Brief for Appellant at 10; *see* Trial Transcript vol. 8, at 147 ("it doesn't establish any particular fact of consequence in this conspiracy or any of the substantive charges"). Second, Nunn argues that it should have been excluded as evidence of other crimes under Fed.R.Evid. 404(b). *See* Trial Transcript vol. 10, at 23. To the contrary, the government argues, the conversation was an "attempt to keep Walker from even considering becoming a government witness against members of the Duke conspiracy" and was, therefore, relevant evidence of Nunn's participation in the conspiracy. *See* Brief for Appellee at 44.

■ We agree with the government's characterization of the conversation. Given both the circumstances and substance of the conversation, we think that the jury could have reasonably inferred from

Nunn's conversation with Walker that she was threatening him. As a threat made to a potential informant, the conversation was relevant evidence of Nunn's knowledge of and participation in the conspiracy. In *United States v. Perkins*, 926 F.2d 1271, 1279–80 (1st Cir.1991), the First Circuit considered a similar conversation, in which defendant Perkins told an undercover DEA agent that if he informed "someone would kill [him]." The First Circuit found the conversation admissible simply as relevant evidence. It was "probative of Perkins' involvement in the charged conspiracy, reflecting both his complicity with [the DEA agent] and his consciousness of guilt." *Id.* at 1280. We also note that, as direct evidence of Nunn's participation in the conspiracy, the conversation is not Rule 404(b) evidence. *See United States v. McConnell*, 903 F.2d 566, 571 (8th Cir.1990) ("Evidence that is probative of the crime charged and not relevant solely to uncharged crimes is not 'other crimes' evidence." (quoting *United States v. Cerone*, 830 F.2d 938, 948 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988))), *cert. denied,* — U.S. ——, 111 S.Ct. 1011, 112 L.Ed.2d 1093 (1991). The district court did not abuse its discretion in admitting the conversation.

### B. Sufficiency of the Evidence

When reviewing Nunn's sufficiency arguments, we view "the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences." *United States v. Ivey*, 915 F.2d 380, 383 (8th Cir.1990). We can reverse only if "a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *Id.*

Nunn first argues that the evidence of her involvement in the twenty-kilogram transaction proves only her presence at some of the meetings between Chambers and Monte Nunn. The evidence shows that Serena was present three times when Chambers met Monte Nunn prior to the twenty-kilogram sale: first, by chance on the street; again at their fourth meeting on May 16, 1989, at a McDonald's; and at their afternoon meeting on May 17, at which Monte Nunn inspected the cocaine before the sale later that day. *See* Trial Transcript vol. 2, at 123, 167–68, vol. 3, at 6. Nunn points to the testimony of both Chambers and Loren Duke (Ralph Duke's nephew), however, that she was not involved in their conversations about the twenty-kilogram sale. *See id.* vol. 3, at 102, vol. 5, at 94–95. Thus, she argues that the evidence proves only her innocent presence in the company of drug-dealers.

To convict Nunn of aiding and abetting the attempt to possess with intent to distribute the twenty kilograms, the government must prove more than her mere association with Chambers and Monte Nunn, or her mere knowledge of their transaction. *See United States v. Grey Bear*, 828 F.2d 1286, 1292–93 (8th Cir.1987), *vacated in part*, 836 F.2d 1088 (8th Cir. 1987). Rather, the government must prove some "affirmative participation which at least encourages the perpetrator." *Ivey*, 915 F.2d at 384. We disagree with Nunn that the evidence did not show some affirmative participation on her part.

First, the government contends that Serena Nunn was not merely present at Monte Nunn's meetings with Chambers, but that she drove him to those meetings. While the record is not entirely clear, the jury could reasonably infer that she did indeed drive. At the May 17 meeting, for instance, Monte arranged to meet Chambers at a car wash. Chambers testified that "Monty showed up with Serena in a car, and Monty got out of the car, and got in the car with me." Trial Transcript vol. 3, at 7. Monte Nunn and Chambers then went to the hotel to inspect the cocaine. The jury reasonably could have inferred that Serena drove Monte to meet Chambers and dropped him off. Similarly, while the government asserts that, later the same day, Serena picked "[Monte] Nunn up after [his] meeting [with Chambers] and drove him to Loren Duke's home," brief for appellee at 12, the record is not so clear. Yet, when asked whether anyone else was present when he saw Monte Nunn that afternoon, Loren Duke replied:

A: Just Serena Nunn.

Q: And you sent her on her way?

A: Yes.

Trial Transcript vol. 4, at 148. The same inference—that Serena dropped off Monte—again seems reasonable.

The government also points to a phone call between Serena and her sister at 6:37 a.m. on May 18, 1989—just after the twenty-kilogram transaction occurred in the evening on May 17—in which they discuss the whereabouts of Duke and Monte Nunn following the transaction. *See* Exhibit 365–A; Trial Transcript vol. 11, at 88. While alone this evidence would suggest only Serena's knowledge of an illegal act, together with her actions in driving Monte Nunn to the meetings with Chambers, and the other evidence· of her involvement in the conspiracy, it provides evidence of her affirmative, participation. Similarly, we held in *Ivey* that defendant's act of driving his co-conspirator to the Federal Express office to pick up a package, together with evidence of his involvement in the conspiracy, was sufficient to convict him of aiding and abetting. *Ivey*, 915 F.2d at 384.

■ To convict Nunn of conspiracy under 21 U.S.C. § 846, the government must prove that she entered into an agreement with at least one other person for an unlawful purpose. *United States v. Maejia,* 928 F.2d 810, 813 (8th Cir.1991). Proof of the conspiracy need not be express, but can be implied from all the surrounding facts. *Henderson v. United States,* 815 F.2d 1189, 1191 (8th Cir.1987). Given the record in this case as a whole, a reasonable jury would not have entertained a reasonable doubt about the existence of the conspiracy. Nunn does not contest this. Rather, she argues that the evidence is not sufficient to establish her participation in the conspiracy. Once the conspiracy is proved, however, "even slight evidence connecting [Nunn] to the conspiracy would be sufficient to support [her] conviction." *United States v. Foote,* 898 F.2d 659, 663 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990). We think the government adduced more than slight evidence connecting Nunn to ·the conspiracy.

The government introduced several telephone conversations involving Serena Nunn recorded pursuant to a wiretap on two phones at the house occupied by Monte Nunn and his mother. These conversations reveal Serena Nunn taking messages about drug transactions, making calls to collect money for prior sales, and discussing the proceeds of other sales. *See* Exhibits 234, 236, 238, 258, 266. As indicated in the instances involving Monte Nunn and Doris Admon, Serena also assisted participants in the conspiracy by driving them to various places. Her phone conversations suggest that she knew the nature of the transactions for which she provided transportation. And when officers executed the search warrant at Monte Nunn's house, they found Serena in the bedroom, where she denied knowing Monte, even though two photographs of them together were hanging on the walls. *See* Trial Transcript vol. 11, at 163. We think this evidence, together with the other evidence we have discussed, is more than the slight evidence needed to connect Serena Nunn to the conspiracy.

■ To support her conviction of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), the government must prove that Nunn knowingly possessed cocaine with the intent to distribute it. *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988). The cocaine and cocaine base charged in count 12 was seized during the execution of a warrant on February 1, 1989, at the house where Serena lived with her mother. Agents also seized from the house several scales, over $3,000 in cash, drug packaging materials, two pagers, a cocaine pipe, and mannitol, used as a cutting agent. In an upstairs bedroom, the agents found a cardboard box on the closet floor containing the drugs and two letters addressed to Serena Nunn, one at 426 24th Avenue North—Monte Nunn's house. *See* Trial Transcript vol. 4, at 13–14. Serena argues that because she was not present during the search and because others were present in the room where the drugs were found, the government did not prove possession.

We disagree. Proof of constructive possession, which we have defined as "knowl-

edge of presence plus control," is sufficient to sustain a conviction under 21 U.S.C. § 841(a)(1). *Matra,* 841 F.2d at 840. More specifically, "the essence of constructive possession is not direct, physical control, but the ability to reduce an object to actual possession.... It is enough if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer." *United States v. Holm,* 836 F.2d 1119, 1123 (8th Cir.1988) (citations omitted). Thus, we have clearly held that neither presence at the seizure nor ownership of the object seized is necessary. *Id.* at 1122.

When officers executed the May 4, 1989, warrant at Monte Nunn's house, Serena Nunn told them that she lived at 1414 Queen Avenue North with her mother. *See* Trial Transcript vol. 11, at 163, 169. "A person has constructive possession of contraband if he has ... 'dominion over the premises in which the contraband is concealed.'" *Matra,* 841 F.2d at 840 (quoting *United States v. Cardenas,* 748 F.2d 1015, 1019 (5th Cir.1984)). "[C]onstructive possession may be joint among several defendants; it need not be exclusive." *United States v. Brett,* 872 F.2d 1365, 1369 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). Together with Serena's association with known drug dealers, which provides circumstantial evidence of possession, *United States v. O'Connell,* 841 F.2d 1408, 1425 (8th Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989), Serena's admission that she lived at 1414 Queen Avenue is, therefore, enough to constitute constructive possession.

C. Sentencing

██ Adopting the presentence investigation report, the district court calculated Nunn's base offense level at 34 with a criminal history category of I. The court then increased by two levels for obstruction of justice. *See* U.S.S.G. § 3C1.1. Nunn's sentence of 188 months fell at the bottom of the resulting guideline range of 188–235 months. Nunn argues that the district court erred when it increased her base offense level for obstruction of justice, and when it refused to decrease her base offense level by either two or four levels for being a minor or minimal participant in the offense. *See* U.S.S.G. § 3B1.2. We find no error.

Guideline § 3C1.1 provides for a two-level increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The district court found, in part, that Nunn's telephone conversation with Kevin Walker in which she threatened him was' sufficient to constitute obstruction of justice. We agree. Application Note 3 provides a non-exhaustive list of examples of conduct to which the enhancement applies, including "(a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Accordingly, we have several times held that threats made by defendant to others, including informants, are sufficient to constitute obstruction of justice. *See United States v. Nash,* 929 F.2d 356, 359 (8th Cir.1991) (threaten co-defendants); *United States v. Penson,* 893 F.2d 996, 998 (8th Cir.1990) (threaten witness); *United States v. Williams,* 879 F.2d 454, 457 (8th Cir.1989) (threaten informant). As indicated, we agree that Nunn's conversation with Walker constituted a threat.

██ Finally, we do not agree that Nunn was entitled to a reduction in her base offense level as either a minor or a minimal participant under U.S.S.G. § 3B1.2. As we have frequently held, "A sentencing court's conclusion that a defendant is not a minimal or minor participant is a factual determination which is reviewed under a clearly erroneous standard." *United States v. Hutchinson,* 926 F.2d 746, 747 (8th Cir. 1991). Given the evidence presented at trial, we cannot say that the district court's finding was clearly erroneous.

III. CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.