972 F.2d 355
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES OF AMERICA, Appellee,
v.
John Henry WILLARD, Appellant.
 No. 92-1362.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: August 10, 1992.
Filed: August 21, 1992.
 
 Before BEAM, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 PER CURIAM.
 
 
 1
 John Henry Willard now appeals his thirty-three month sentence imposed by the district court upon his plea of guilty to conspiring to distribute cocaine in violation of 21 U.S.C. 846. We affirm.
 
 
 2
 Willard was one of seven defendants named in a three-count indictment. He pled guilty to Count III in exchange for the government's agreeing to dismiss the other two counts and to amend Count III by deleting the allegation that the offense involved over 500 grams of cocaine.
 
 
 3
 Willard argues that the district court incorrectly calculated his sentence because it 1) improperly counted cocaine from the second buy, 2) failed to grant him a downward departure due to his "minor" role in the conspiracy, and 3) erroneously increased his offense because he "threatened" a testifying co-defendant, thereby obstructing justice.
 
 
 4
 The cocaine in dispute in this appeal is cocaine from the second of three buying trips to Florida by Kim Benes and Shelley Bertelson-Willson. Upon returning from their second buying trip to Florida, Benes and Bertelson-Willson went to the home of Scott and Jane Wells with eight ounces of cocaine. Benes notified Mitchell Hildreth that the cocaine had arrived and that it would be at the Wells' home. Hildreth, who was murdered on August 3, 1989, a few days after the third buying trip, arrived at the Wells' home accompanied by Willard. Benes objected to Willard's presence because he did not know Willard. Hildreth told Benes that Willard "has a part of this," i.e. part of the cocaine. Hildreth also told Benes, "It's okay, he's got money in it." (TR. at 89).
 
 
 5
 Willard and Mario Janssen, followed Benes and Hildreth down into the basement where they mixed and divided the cocaine. Everyone then used some cocaine. Ounce and half-ounce baggies of cocaine were sitting on the table. Willard admits that he was in the Wells' home, but asserts he thought he was only going there for a party, at which, admittedly, he expected there to be cocaine. He also claimed that he did not go downstairs to see the cocaine being cut and that he had no financial interest in the cocaine. That evening Willard told Hildreth that he would like to purchase some cocaine. A few hours later, Hildreth delivered one ounce of cocaine to Willard.
 
 
 6
 After the defendant and others involved in the conspiracy had been indicted, Willard ran into Mario Janssen at a local bar. Willard followed Janssen into the bathroom and, according to Janssen, told him that if Janssen testified against him "there would be hell to pay." Willard recalls meeting Janssen but denies threatening him.
 
 
 7
 On appeal, Willard claims that the district court incorrectly included cocaine from that second trip in its sentencing calculus. He argues that he did not know the scope of his associates' drug activities and that the second drug buy constitutes a separate and distinct conspiracy in which he did not participate.
 
 
 8
 The district court did not err in including the 184 grams obtained on the second trip to Florida in determining Willard's base offense level. The court's determination of factual matter for sentencing is evaluated using the "clearly erroneous" standard. The court's determination that the amount of cocaine present at the second buy was reasonably foreseeable is not clearly erroneous in light of the testimony and evidence presented. The district court was cautious and only ascribed to Willard that amount of cocaine he could reasonably have seen at the house, not all of the cocaine involved in the entire conspiracy. See United States v. Beal, 940 F.2d 1159, 1163 (8th Cir. 1991) (drugs handled by a codefendant or associate with whom defendant has a working relationship may be included when calculating the offense level attributable to the defendant). The district court obviously did not believe Willard's assertions that he thought he was just going to the Wells' to party. The district court was in a better position to evaluate the defendant's credibility, thus its decision must be given due deference.
 
 
 9
 Willard also claims that he should have been granted a downward departure since he was a "minor" player in the conspiracy. His involvement may not have been the same as that of the others, but the court did not consider it minor. Therefore, the court was under no obligation to grant him a reduction. United States v. Nunn, 940 F.2d 1128 (8th Cir. 1991). The court's finding is not clearly erroneous and therefore should not be reversed.
 
 
 10
 Nor should the district court's decision to impose a two-level enhancement for obstruction of justice be reversed as clearly erroneous. Following Janssen into the men's room, Willard said, "If you testify against me, there will be hell to pay." Willard tries to explain away his statement to Janssen as vague and non-threatening. The district court's conclusion that the statement was threatening was reasonable. Threatening a witness or potential witness constitutes obstruction of justice. Id. at 1133. In light of the totality of the evidence, the district court was correct in imposing a two-level enhancement for obstruction of justice.
 
 
 11
 Accordingly, we affirm the decision of the district court.