970 F.2d 494
 UNITED STATES of America, Appellee,
v.
Levi SWINNEY, Appellant.
UNITED STATES of America, Appellee,
v.
Freddie BLACKSHIRE, Appellant.
UNITED STATES of America, Appellee,
v.
Donzell MAYFIELD, Appellant.
UNITED STATES of America, Appellee,
v.
James Harvey BRADLEY, also known as Junior Bradley, Appellant.
UNITED STATES of America, Appellee,
v.
Terence SWINNEY, Appellant.
UNITED STATES of America, Appellee,
v.
James A. WILLIS, also known as Jimmy Willis, Appellant.
 Nos. 91-1294, 91-1502, 91-2135, 91-2486, 91-2931 and 91-3151.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1992.
Decided July 30, 1992.
Rehearing Denied in Nos. 91-1502,
91-2486, 91-2931 and 91-3151
Oct. 1, 1992.
 
 Gary M. Cupples, Kansas City, Mo., argued, for Levi Swinney.
 David S. Rauzi, Kansas City, Mo., argued, for Fred Blackshire.
 Truman K. Eldridge, Jr., Kansas City, Mo., for Donzell Mayfield.
 Kevin E. Regan, Kansas City, Mo., for James Bradley, Jr.
 Julie Faye Keith, Kansas City, Mo., argued (Ward K. Brown, on the brief), for Terence Swinney.
 Patrick J. Stueve, Kansas City, Mo., argued (Charles E. Atwell, on the brief), for James Willis.
 Mark Andrew Miller, Asst. U.S. Atty., Kansas City, Mo., argued (David Detar Newbert, on the brief), for U.S.
 Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 In two separate trials, Levi Swinney, Freddie Blackshire, Donzell Mayfield, James Harvey Bradley, Terence Swinney, and James A. Willis (collectively the defendants) were convicted of various drug-related crimes arising out of a large cocaine distribution conspiracy. The defendants appeal their convictions and sentences. We affirm.
 
 
 2
 The four defendants convicted at the first trial, Levi Swinney, Terence Swinney, Blackshire, and Mayfield, contend they are entitled to a new trial because the Government, in violation of Batson v. Kentucky, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 1723-24, 90 L.Ed.2d 69 (1986), used two peremptory challenges to remove black jurors based on their race. One of the jurors the Government struck from the jury had stated during voir dire that he might lose the opportunity for a job promotion if he was required to sit on jury duty. The Government explained that it believed this juror was "a loose cannon" that might hold a grudge against the Government. The Government struck the second black juror because he wore dark sunglasses and "a big gold watch" into the courtroom, and the prosecuting attorney was unable to establish eye contact with him. Based on these observations, the Government explained that it believed the juror might not respect the judicial system or the Government's case. Although the district court expressed some skepticism about the Government's logic in striking the second juror, the court found the Government's challenges were properly based on race-neutral reasons.
 
 
 3
 Whether the Government exercised its peremptory challenges in a race-neutral manner is a question of fact subject to the clearly erroneous standard of review. Jones v. Jones, 938 F.2d 838, 841 (8th Cir.1991). As is often the case, the Government exercised its peremptory challenges using intuitive guesses about the jurors' attitudes toward the Government and the subject matter of the case, relying on the jurors' statements during voir dire, their general demeanor, and personal traits like style of dress. The district court was in a unique position to judge the Government's peremptory challenges in light of the voir dire, and the district court's observations in this regard are particularly crucial. United States v. Sherrills, 929 F.2d 393, 395 (8th Cir.1991). In this case, the district court characterized the Government's reason for striking the second juror as "a rather wild guess." Nevertheless, the court accepted the Government's explanation, noting the juror's dress and behavior "might tend to show some possible tolerance for drug use." The district court expressly found the Government exercised its peremptory challenges on a race-neutral basis and denied the defendants' motion for a mistrial. Having reviewed the record, we are not left with the definite and firm conviction that the district court's finding is mistaken. See Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We thus reject the defendants' contention that the Government violated Batson and deprived them of an impartial jury.
 
 
 4
 The two defendants convicted in the second trial, Bradley and Willis, contend their convictions on count fifteen, possession with intent to distribute cocaine, must be reversed because venue in the Western District of Missouri was improper for this count. We review the evidence in the light most favorable to the Government to determine whether the Government established venue by a preponderance of the evidence. United States v. Delgado, 914 F.2d 1062, 1064 (8th Cir.1990). Viewed in this light, we conclude the evidence supports venue over count fifteen in the Western District of Missouri.
 
 
 5
 Bradley and Willis contend venue was not proper because the evidence does not show they possessed the cocaine in the Western District of Missouri or intended to distribute it there. We disagree. "Proper venue lies in the district where the ... offense was committed. Fed.R.Crim.P. 18. If the offense was begun in one district and completed in another, or committed in multiple districts, the government may try the case in any district where the offense was 'begun, continued, or completed.' " United States v. Kiser, 948 F.2d 418, 425 (8th Cir.1991) (quoting 18 U.S.C. § 3237 (1988)), cert. denied, --- U.S. ----, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). Possession with intent to distribute a controlled substance is a continuing crime. Id. Thus, Bradley and Willis could properly be tried in any district where they had possession of the cocaine, whether they intended to distribute the cocaine in that district or someplace else.
 
 
 6
 In this case, we conclude Bradley possessed the cocaine in the Western District of Missouri. Possession of a controlled substance can be either actual or constructive. Id.; United States v. Nunn, 940 F.2d 1128, 1132-33 (8th Cir.1991). We have defined constructive possession as knowledge of presence plus control. E.g., Nunn, 940 F.2d at 1132-33. " '[T]he essence of constructive possession is not direct, physical control, but the ability to reduce an object to actual possession.... It is enough if one person is sufficiently associated with another having physical possession that he is able to produce a controlled substance for a customer.' " Id. at 1133 (quoting United States v. Holm, 836 F.2d 1119, 1123 (8th Cir.1988) (citations omitted)). Bradley and Willis worked in concert to purchase the cocaine. After arranging the purchase, Bradley and Willis each contributed to the purchase price. Willis then travelled to Los Angeles, where he paid for and took possession of the cocaine. Although Bradley stayed in Kansas City, Missouri, he had a vested interest in the successful completion of the cocaine purchase, and he stayed in contact with Willis and another coconspirator who was helping with the purchase. Bradley was told when the cocaine purchase was completed and that the quality of the cocaine was good. Given these circumstances, Bradley had constructive possession of the cocaine in Kansas City, Missouri, once his partner in the crime, Willis, had actual possession of the cocaine in Los Angeles.
 
 
 7
 Based on his constructive possession of the cocaine in Kansas City, Missouri, Bradley was properly subject to venue in the Western District of Missouri. Venue was also proper over Willis. "One who has never been physically present in a district may nonetheless be prosecuted there for possession if he aids and abets [another] who has either actually or constructively possessed a controlled substance in the jurisdiction." United States v. Medina-Ramos, 834 F.2d 874, 877-78 (10th Cir.1987); see also Delgado, 914 F.2d at 1065-66 (constructive possession by one aider and abetter in district where charge is filed provides basis for venue over second aider and abetter). Because Willis aided and abetted Bradley in the purchase of a controlled substance, cocaine, he may properly be tried in the Western District of Missouri, where Bradley had constructive possession of the cocaine.
 
 
 8
 Willis contends the district court committed error in refusing to allow him to represent himself pro se with the assistance of standby counsel. The record does not support Willis's contention. Defendants in criminal trials have a constitutional right to waive the assistance of counsel and conduct their own defense. Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). A court, however, may appoint standby counsel to assist a defendant who chooses to proceed pro se. McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984). The defendant remains free, of course, to elevate standby counsel to a lead counsel role, thereby waiving the defendant's Faretta rights. Id. at 182, 104 S.Ct. at 953. "Once a pro se defendant invites or agrees to any substantial participation by [standby] counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously ... request[s] that standby counsel be silenced." Id. at 183, 104 S.Ct. at 953. The defendant, however, does not have a constitutional right to hybrid representation. Id.; Cross v. United States, 893 F.2d 1287, 1291-92 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). That is, the defendant cannot demand the right to act as co-counsel. Cross, 893 F.2d at 1292. Thus, the district court may properly require the defendant to choose either to proceed pro se, with or without the help of standby counsel, or to utilize the full assistance of counsel, who would present the defendant's defense. See id.; United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir.1989), cert. denied, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990).
 
 
 9
 In this case, Willis initially invoked his right to proceed pro se and the district court appointed standby counsel to assist Willis. On the first day of Willis's trial, however, Willis had his standby counsel take the lead position by conducting voir dire and making the opening statement to the jury. Through the remainder of the trial, standby counsel conducted Willis's defense.
 
 
 10
 Willis contends the district court refused to permit him to speak on his own behalf, ignored his requests to represent himself, and required him "to rely exclusively on the representation of court-appointed counsel." The record belies Willis's contention. The record shows the district court allowed Willis to address the court on several occasions outside the presence of the jury. On the second day of his trial, Willis raised and argued points of law contained in a motion he had prepared on his own. Willis, however, never sought to assert his pro se status in front of the jury. Ultimately the district court told Willis that he would have to rely on his attorney to represent him before the court, and Willis would not be allowed to participate as co-counsel. When Willis complained about his court-appointed standby counsel and about not being allowed to speak for himself, the district court asked him, "You don't want to try this case yourself, do you?" Willis replied, "No, sir." Given these circumstances, we conclude the district court did not interfere with Willis's attempts to represent himself, Willis waived his Faretta right to proceed pro se, and Willis never "expressly and unambiguously renew[ed] his request" to represent himself without interference from his standby counsel. McKaskle, 465 U.S. at 183, 104 S.Ct. at 953. The district court thus did not abuse its discretion in requiring Willis to address the court through his court-appointed attorney. See Cross, 893 F.2d at 1292; Nivica, 887 F.2d at 1121.
 
 
 11
 In a related contention, Willis asserts the district court committed error in denying his request for a continuance and appointment of new standby counsel. Willis contends he was deprived of his Sixth Amendment right to conflict-free assistance of counsel. On the second day of trial, Willis and his attorney requested that the court allow the attorney to withdraw from Willis's case, citing a contentious relationship between them. Willis, however, did not request that the court remove his attorney so he could proceed pro se. Instead, Willis wanted a continuance so he could have another attorney represent him, thus underscoring the fact he never unambiguously sought to represent himself. The district court noted that Willis "has had considerable problem[s] with attorneys" in the past, and that Willis fired the attorney who obtained a hung jury in the first trial of this case--despite strong evidence against Willis. The district court then considered the reasons Willis and his attorney gave for seeking a continuance and substitution of counsel, but found the reasons did not justify substituting counsel with the trial already in progress. The district court relied heavily on Willis's past difficulties with his trial counsel and the court's belief "that a third time around [was not] going to be any more satisfactory" from Willis's standpoint. In short, the court concluded the antagonistic relationship between Willis and his attorney was not unusual given Willis's abrasiveness and hostility towards the attorneys working on his behalf and, thus, did not warrant a continuance or the appointment of new standby counsel.
 
 
 12
 Whether to grant a continuance and substitution of counsel is a matter committed to the sound discretion of the district court. Meyer v. Sargent, 854 F.2d 1110, 1114 (8th Cir.1988); United States v. Heine, 920 F.2d 552, 555 (8th Cir.1990). "To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel." United States v. Sayers, 919 F.2d 1321, 1323 (8th Cir.1990). Justifiable dissatisfaction sufficient to merit substitution of counsel includes "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir.1991). The defendant's right to counsel, however, "does not involve the right to a 'meaningful relationship' between an accused and his counsel." United States v. Machor, 879 F.2d 945, 952 (1st Cir.1989), cert. denied, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 and cert. denied, 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990); Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983).
 
 
 13
 When deciding whether to grant the defendant's motion, the district court must balance "the [defendant's] right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir.1985). " 'A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial.' " Meyer, 854 F.2d at 1113 (quoting United States v. White, 529 F.2d 1390, 1393 (8th Cir.1976)). Thus, last-minute requests to substitute counsel must not be allowed to become a tactic for delay. Tuitt v. Fair, 822 F.2d 166, 172 (1st Cir.), cert. denied, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).
 
 
 14
 Having reviewed the record with the above principles in mind, we cannot say the district court abused its discretion in denying Willis's request for a continuance and substitution of counsel. Although Willis and his attorney differed on trial tactics and strategy, and expressed frustration with each other, the record does not reflect an irreconcilable conflict or complete breakdown in communication between them. At times, Willis and his attorney were not on friendly terms. Nevertheless, Willis was uninhibited in stating what path he thought his defense should take. Willis's attorney kept his composure and listened to Willis under trying circumstances, and Willis has failed to show that his attorney failed zealously to represent him because of their abrasive relationship. Furthermore, the record supports the district court's conclusion that Willis had difficulties with his attorneys because of his own conduct, and there was "no reason to [believe] ... any lawyer [could] work with Mr. Willis any better than [his court-appointed attorney]." According to the district court, Willis "tr[ied] to control his defense in an unusual way," and when in chambers, Willis continually interrupted his attorney and the court to make frivolous arguments. After considering these factors and the public's interest in having this long-delayed trial finished, the district court concluded a continuance and substitution of counsel was not warranted. We are satisfied the district court's decision was not an abuse of discretion.
 
 
 15
 Bradley contends the district court committed error in refusing to grant his motion for severance. Bradley asserts that he was subjected to substantial and undue prejudice because he was joined in the same trial with his coconspirator Willis. According to Bradley, his defense was undermined by the contrary defense that Willis presented. Bradley also asserts he was subjected to "guilt by association with Mr. Willis" because the jury might have overheard Willis and his attorney arguing in the judge's chambers and a single juror may have seen and overheard them engaging in a "heated exchange" in the courthouse parking lot. The district court denied Bradley's motion for severance before the trial started and again when Bradley renewed his motion after Willis and his attorney argued in the judge's chambers and parking lot.
 
 
 16
 "A district court's denial of a motion for severance will not be reversed absent an abuse of discretion resulting in clear prejudice." United States v. Johnson, 944 F.2d 396, 402 (8th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991), and cert. denied, --- U.S. ----, 112 S.Ct. 983, 117 L.Ed.2d 146 (1992), and cert. denied, --- U.S. ----, 112 S.Ct. 2951, 119 L.Ed.2d 574 (U.S.1992). The defendant carries a heavy burden in making this showing. United States v. Martin, 866 F.2d 972, 979 (8th Cir.1989). Ordinarily, coconspirators are tried together when the charges against them, as here, are based on the same acts and evidence. Id. "The existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable." Johnson, 944 F.2d at 402. Neither hostility between the defendants nor one defendant's attempt to save himself at the expense of the other requires separate trials. United States v. Garrett, 961 F.2d 743, 746 (8th Cir.1992).
 
 
 17
 In this case, Bradley's and Willis's defenses were not irreconcilable. Bradley chose not to testify to avoid "fac[ing] rigorous cross-examination by the Government [about] his ... criminal history." Bradley Brief at 14. For his defense, Bradley maintained that the Government failed to prove he was guilty beyond a reasonable doubt. Willis's defense, however, exposed the jury to evidence about Bradley's criminal background and tended to implicate Bradley. Nevertheless, neither Willis's defense strategy, which may have exposed the jury to a portion of Bradley's background that Bradley was trying to conceal, nor the possibility that Willis may have tried to shift blame onto Bradley mandates separate trials. Johnson, 944 F.2d at 403.
 
 
 18
 Bradley has also failed to show how Willis's behavior affected the fairness of his trial or how it caused the jury to find him guilty by association with Willis. Nothing in the record shows the jurors actually heard Willis arguing with his attorney or, if they did, that it affected their view of Bradley. The district court was in a position to observe whether Willis's behavior affected the jury or the fairness of Bradley's trial. Bradley renewed his motion for severance after Willis's outbursts, and the district court concluded severance was unnecessary. Having reviewed the record, we cannot say the district court abused its discretion or that the denial of severance unfairly prejudiced Bradley. Thus, because "[t]he mere existence of generally antagonistic defenses does not require severance, and [because Bradley's] assertion[s] 'standing alone do[ ] not affirmatively demonstrate any prejudice requiring reversal,' " we affirm the district court's denial of Bradley's motion for severance. United States v. Davis, 882 F.2d 1334, 1341 (8th Cir.1989) (quoting United States v. Faul, 748 F.2d 1204, 1217 (8th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 632 (1985)), cert. denied, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990).
 
 
 19
 Levi Swinney, Terence Swinney, and Mayfield also contend the district court committed error in denying their motions for severance. These defendants contend their limited involvements in the conspiracy entitled them to severance because the jury could not keep straight the evidence and charges against them. "Separate trials, however, are not required just because the quantum of proof against each defendant is unequal or because each defendant did not participate in every act constituting the joined offenses." United States v. Kaminski, 692 F.2d 505, 520 (8th Cir.1982) (citations omitted). In this case, the trial was not so complicated that the jurors could not compartmentalize the evidence against each defendant. United States v. Kindle, 925 F.2d 272, 277 (8th Cir.1991). The district court thus did not abuse its discretion in denying the defendants' motions for severance. Johnson, 944 F.2d at 402.
 
 
 20
 Several of the defendants also raise contentions challenging their guidelines sentences. These contentions merit little discussion. Willis contends the district court committed error by adding a two-level upward adjustment to his sentencing level for obstruction of justice under U.S.S.G. § 3C1.1. The district court found Willis committed perjury when he testified. Specifically, the court found Willis committed perjury when he denied having ever met or contacted two coconspirators or having gone to California for one of the cocaine transactions. Willis's testimony was in direct contradiction to one of his coconspirator's testimony and to motel receipts and phone records that placed Willis in California. "Based on this testimony, which in keeping with the jury verdict the [d]istrict [c]ourt deemed to be untruthful, we conclude that the adjustment for obstruction of justice was not unlawfully applied." United States v. Wagner, 884 F.2d 1090, 1098 (8th Cir.1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).
 
 
 21
 Terence Swinney, Bradley, and Mayfield each contend the district court's finding on the amount of cocaine attributable to them for sentencing purposes is clearly erroneous. During sentencing, the Government must establish the quantity of drugs attributable to each defendant by a preponderance of the evidence. United States v. Malbrough, 922 F.2d 458, 464 (8th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991). When, as here, the defendants' convictions involve violations of federal drug statutes, the district court "may consider amounts of drugs involved in the conviction of coconspirators. There is no requirement that only the amounts involved in a single defendant's indictment or conviction may be considered in the calculation of that defendant's base [offense] level [under the guidelines]." United States v. Holland, 884 F.2d 354, 358 (8th Cir.) (citations omitted), cert. denied, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989). The defendants are responsible "for [their own] conduct and as much of the conduct of [their] coconspirators in furtherance of the conspiracy as [they] either knew about or reasonably could foresee." United States v. Foote, 898 F.2d 659, 667 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 112, 112 L.Ed.2d 81, and cert. denied, --- U.S. ----, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990). Having reviewed the record in light of the above principles, we cannot say the district court's findings on the amount of drugs attributable to the defendants is clearly erroneous.
 
 
 22
 The defendants have raised a number of additional issues in their briefs that we have not discussed. We have carefully considered those issues and reject them on their merits. Accordingly, we affirm the defendants' convictions and sentences.