**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph PIERRE, Defendant–Appellant.**

No. 94–2755.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1995.

Decided Feb. 8, 1995.

---

James P. Fleissner, Asst. U.S. Atty., Scott Collins (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Frederick F. Cohn, Chicago, IL (argued), for defendant-appellant.

Before FLAUM, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

As a condition of his probation, Joseph Pierre agreed to drug testing. Pierre submitted several urine samples that tested positive for cocaine. The district judge ordered Pierre to undergo counseling and held numerous hearings in an effort to help Pierre understand and comply with the conditions of his probation (one of which was that he not use drugs). Despite these efforts the labora-tory continued to report positive results. Eventually the judge concluded that she had no alternative but to revoke his probation, which she did, sentencing Pierre to 14 months' imprisonment.

The proof in support of revocation was written. The prosecutor submitted laboratory analyses, together with chain-of-custody forms showing that Pierre had furnished the specimens that tested positive. Pierre denied using drugs and insisted that the lab reports must be in error. To this the prosecutor responded with an affidavit by the lab's director, describing the kind of tests performed and the efficacy of these procedures. Pierre insists that this is not enough—that the prosecutor had to put in live testimony showing that his urine actually contained cocaine or its metabolites. Not so. The rules of evidence do not apply to probation-revocation proceedings, Fed.R.Evid. 1101(d)(3), so hearsay is unobjectionable. The district judge must use reliable evidence, but written reports of medical tests are in the main reliable. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *United States v. Blackburn*, 992 F.2d 666, 669–72 (7th Cir.1993). A prosecutor may rely on documents at a probation revocation hearing without any need to demonstrate that live testimony is unavailable or impractical. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *United States v. Verbeke*, 853 F.2d 537, 539 (7th Cir.1988); *Egerstaffer v. Israel*, 726 F.2d 1231, 1235 (7th Cir.1984). See also *United States v. Bell*, 785 F.2d 640, 643 (8th Cir.1986), and *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir.1990), among the many cases permitting district judges to revoke probation on the basis of written drug test results.

A defendant is entitled to go beneath the surface of written reports. To that end he may subpoena the technician to obtain live testimony, in the nature of cross-examination of the reports. As we observed in *United States v. Atkin*, 29 F.3d 267 (7th Cir.1994), most western legal systems permit general use of affirmative testimony by affidavit, provided that the declarant is available for cross-examination (and, in some systems,

even if the declarant is not available). "Judges rely on the self-interest of the parties to flag declarations believed to be unreliable, and they rely on their own skills to get at the truth. Like other judges the world 'round, we believe that the combination of declaration plus an opportunity for live questioning permits reliable fact-finding." *Id.* at 269. But Pierre did not procure subpoenas for either the technicians or the head of the laboratory. He insisted that the prosecutor bore the entire burden, that by relying on written submissions the prosecutor had not shouldered the burden, and that he therefore need not present any evidence. The strategy is understandable. What was the technician going to say on the stand? One vial of urine looks like another; the technicians would not have remembered what they did with Pierre's specimens and therefore would have described their normal procedures, and the judge would not have been enlightened. A court cannot resolve scientific controversies by looking witnesses in the eye; the question is not whether a technician believes the tests accurate but whether they *are* accurate.

To find out whether tests are accurate, one uses the methods of science. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311 (9th Cir.1995). A court could ask whether the lab's procedures are well designed to yield reliable results. It could arrange for retesting of the samples. *United States v. Martin,* 984 F.2d 308 (9th Cir.1993). If the original specimens are no longer available, a court could inquire whether this lab, in particular, produces reliable results. Such an exercise entails statistical methods. The court needed information on the error rate of PharmChem, the lab that analyzed Pierre's samples. If the number of positive results (21) was less than the number of false positives that would have been generated by chance from the considerable volume of samples he provided over several years, the court would have had a basis for doubting the prosecutor's position. We assume that reputable labs collect such information, putting samples through their tests on a double-blind basis to find out how frequently their employees err and to learn how to improve their procedures. Pierre might have sought this information from PharmChem. Or perhaps,

before engaging a laboratory or renewing its contract, the government submits an assortment of samples containing different drugs (and the statistically appropriate number of samples known not to be contaminated) to see how well the lab distinguishes among them. Pierre did not seek from the government any information of this kind. If neither PharmChem nor the Executive Branch of government collects this information, Pierre could have asked the district court to distrust PharmChem's reports until the United States put the lab to such a test. This record, however, offers no reason to believe that PharmChem is less reliable than the median or that a lab of ordinary reliability would generate 21 false positives out of the number of samples Pierre submitted. The district judge accordingly was entitled to credit the reports that were in evidence.

AFFIRMED.