UNITED STATES of America, Appellee,

v.

Timothy Roy ZENTGRAF, Appellant.

No. 93–2786.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 9, 1993.

Decided April 5, 1994.

Daniel Scott, Minneapolis, MN, argued (Virginia G. Villa, on the brief), for appellant.

Joseph T. Walbran, Minneapolis, MN, argued, for appellee.

Before FAGG and WOLLMAN, Circuit Judges, and VIETOR,* District Judge.

VIETOR, District Judge.

Timothy Roy Zentgraf appeals the district court's order revoking his supervised release. Zentgraf contends that the admission of hearsay testimony at his revocation hearing violated his right to confront an adverse witness. We agree and therefore vacate the judgment and remand to the district court for further proceedings in accordance with this opinion.

## I. BACKGROUND

In 1989, Zentgraf pleaded guilty to burglary of a federally insured credit union, a violation of 18 U.S.C. § 2113(a), and was sentenced to thirty-seven months in prison, fol-

---

* The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of

lowed by a three-year term of supervised release. He began his term of supervised release in December of 1991. His conditions of release included the standard prohibitions against committing crimes and associating with felons or persons engaged in criminal activity.

In late 1992, the Duluth, Minnesota police department suspected that Zentgraf was involved in a series of commercial burglaries in the Duluth area and placed him under surveillance. The police observed him on a number of occasions in the company of John Logergren, a convicted felon. On October 25, 1992, the two were seen driving a green Cadillac, which was registered to Logergren's girlfriend. On November 1, 1992, while in the Cadillac, the two men were pulled over for a traffic violation and Zentgraf was issued a citation. Zentgraf was observed driving the Cadillac to and from Logergren's residence and Logergren's landlord identified Zentgraf as a frequent visitor at Logergren's residence.

On November 24, 1992, Logergren was questioned by an FBI agent and two Duluth police officers. Logergren confessed to fourteen burglaries, and named Zentgraf as his accomplice. He gave details about the burglaries, such as the amounts of money stolen and the method of entry into the buildings, that the police confirmed. He told the police where they could find several stolen safes that had been discarded after the burglaries. He described the various tools that Zentgraf and he used to gain entry into the businesses. He told the police that he and Zentgraf used the green Cadillac to commit the burglaries.

On November 30, 1992, pursuant to a search warrant, the police searched the Cadillac which was parked in front of Zentgraf's residence. They found several items that are commonly used in burglaries including hoof nippers, channel lock pliers, drill bits, a lock pick, pry bars, wire cutters, a circuit tester and a book of local police radio frequencies. Police also found a unique green card with handwritten instructions for calling

Iowa, sitting by designation.

the Minnesota Lottery. This card was later identified by employees of a recently burglarized convenience store (the Woodland Spur), who stated that the card was kept taped to the inside of the store's safe. On the floor of the Cadillac's trunk the officers found metal drillings, paint chips and pieces of soap, which can be used as a drilling lubricant.

Supervised release revocation proceedings were held in the district court, and at the revocation hearing evidence of the foregoing facts was introduced. Specifically, in respect to the issue on appeal, the court heard testimony from Sgt. Erspamer, a Duluth police officer who was present during the November 24 questioning of Logergren. Over defense counsel's hearsay objection, the court allowed Erspamer to testify about Logergren's confession in which he implicated Zentgraf. The court then admitted a twelve-page written police report that detailed Logergren's confession over defense counsel's objections that Logergren's statements constituted unreliable hearsay and that they denied Zentgraf the right to confront adverse witnesses. At this point in the hearing no inquiry was made as to Logergren's availability to testify at the hearing.

Later in the hearing, Erspamer testified that Zentgraf went to trial on state burglary charges but the case was dismissed by the judge after the state presented its case in chief. Erspamer believed that one reason the state case was dismissed was Logergren's refusal to testify against Zentgraf. Erspamer further testified that he was informed by Logergren's attorney that the reason Logergren would not testify at Zentgraf's trial on state charges was because "he knew [he] was going back to the Federal penitentiary, and if he wanted to live he was not going to go back in as a snitch." The district court also heard testimony from David Schwab, who was both Zentgraf's and Logergren's probation officer. Schwab testified that he asked Logergren if he would be willing to testify against Zentgraf at the revocation hearing and Logergren indicated that "he would prefer not to in that he did not want to be labeled as an informant or a snitch upon his return to prison."

At the time of the burglaries, Logergren was on federal supervised release, and by the time of Zentgraf's revocation hearing Logergren's supervised release had been revoked and he had been remanded to the custody of the Bureau of Prisons. (His specific location was not mentioned in the revocation hearing, but we were informed by counsel for the government at oral argument that the marshals were told to bring him to the hearing but the marshals "got their directions mixed up" and took him instead to South Dakota. The only federal penal facility in South Dakota is at Yankton, about 300 miles from St. Paul, Minnesota, where Zentgraf's revocation hearing was held.)

The district court revoked Zentgraf's supervised release, finding that he violated state law by burglarizing the Woodland Spur store, and that he violated a condition of his release by associating with Logergren, a convicted felon. Zentgraf was sentenced to twenty-one months imprisonment.

## II. ZENTGRAF'S CONTENTIONS

Zentgraf contends that the admission of Logergren's hearsay testimony deprived him of his right to question adverse witnesses in violation of Federal Rule of Criminal Procedure 32.1(a)(2)(D), which provides that persons at revocation hearings "shall be given * * * (D) the opportunity to question adverse witnesses." Zentgraf alternatively contends that the admission of Logergren's hearsay testimony without a showing of necessity by the government deprived him of his right to confront witnesses against him in violation of the Confrontation Clause of the United States Constitution. U.S. Const. amend. VI. Because of the conclusion we reach in respect to the Rule, we do not reach the alternative contention.

## III. DISCUSSION

### (A) The Rule

Rule 32.1(a)(2) provides in respect to the final hearing on an application for revocation or modification of probation or supervised release:

The revocation hearing, unless waived by the person, shall be held within a reasonable time in the district of jurisdiction. The person shall be given

\* \* \* \* \* \*

(D) the opportunity to question adverse witnesses; \* \* \*.

The rule is essentially a codification of a due process requirement established by the Supreme Court for parole revocation by states in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and for probation revocation by states in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

In *Morrissey* the Court stated:

Our task is limited to deciding the minimum requirements of due process. They include \* \* \* (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) \* \* \*. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

408 U.S. at 488–89, 92 S.Ct. at 2604. *Gagnon* held that probationers have the same rights as parolees under *Morrissey.* In respect to the confrontation right, the *Gagnon* Court explained:

Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.

411 U.S. at 738 n. 5, 93 S.Ct. at 1760 n. 5.

■ Zentgraf argues that because Rule 32.1(a)(2)(D) does not include language expressly permitting the court, for good cause, to disallow confrontation, the Rule is more restrictive than the due process requirement of *Morrissey* and *Gagnon,* and absolutely requires confrontation. We do not agree. In the Advisory Committee Notes, it is stated:

The hearing required by rule 32.1(a)(2) is not a formal trial; the usual rules of evidence need not be applied. See *Morrissey v. Brewer,* supra ("the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"); Rule 1101(d)(e) of the Federal Rules of Evidence (rules not applicable to proceedings "granting or revoking probation").

Furthermore, in *United States v. Bell,* 785 F.2d 640 (8th Cir.1986), a case involving a probation revocation hearing governed by Rule 32.1(a)(2)(D), we clearly applied the "good cause" exception permitted by *Morrissey* and *Gagnon.*

■ In *Bell,* we noted that *Morrissey* and *Gagnon* require the trial court in a revocation proceeding to "balance the [defendant's] right to confront a witness against the grounds asserted by the government for not requiring confrontation. *United States v. Penn,* 721 F.2d 762, 764 (11th Cir.1983). As is true of any balancing test, it is not possible to articulate fixed rules on what the government must show to establish 'good cause' in every case." *Bell,* 785 F.2d at 642–43. In *Bell* we said that the court should first "assess the explanation the government offers of why confrontation is undesirable or impractical," and should then consider "the reliability of the evidence which the government offers in place of live testimony." 785 F.2d at 643.

### (B) Failure to Produce Witness

■ In this case the district judge did not engage in the balancing test. He did not, either during the hearing or in his written findings and conclusions filed after the hearing, assess the explanation of the government for not producing Logergren at the hearing. Indeed, when evidence of Logergren's hearsay statement inculpating Zentgraf was received into evidence over Zentgraf's objections, the government had not even offered an explanation. The only explanation was

offered later in the hearing when Logergren's probation officer testified that Logergren, when asked if he would be willing to testify against Zentgraf in the revocation hearing, replied that he "would prefer not to" because he did not want to be labeled an informant or snitch upon his return to prison. We conclude that this explanation fails to show that it was undesirable or impractical to produce Logergren for live testimony. A prisoner-witness' "preference" not to testify, even though motivated by a concern about being labeled a snitch, does not make his live testimony undesirable or impractical, at least absent a satisfactory showing that testifying would place the prisoner-witness in danger of great bodily harm from which he could not be adequately protected by prison officials.[1]

### (C) Reliability of Hearsay Statement

██ In admitting the evidence of Logergren's hearsay statement, the district court specifically found the evidence "reliable for the purposes of this proceedings." Ordinarily, the reliability of an accomplice's confession implicating the accused is viewed with "special suspicion." *See Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986); *Bruton v. United States,* 391 U.S. 123, 141, 88 S.Ct. 1620, 1630–31, 20 L.Ed.2d 476 (1968) (White, J., dissenting). In this case, however, there is indicia of reliability in respect to Logergren's hearsay statement. When he made the statement, Logergren was not in custody, he was not promised anything or threatened in any way, he did not attempt to avoid or lessen his own culpability by suggesting that Zentgraf was in some way more responsible than he, there was abundant independent evidence corroborating the details of Logergren's statement, and there was also independent corroborating evidence connecting Zentgraf to the burglaries. The district court had an adequate basis for finding Logergren's statement reliable.

### (D) "Good Cause" Balancing

██ As we previously noted, the district court did not engage in a balancing test. We

do engage in that test, and we conclude that the balance must be struck in favor of the right of confrontation. The hearsay statement of Logergren is sufficiently reliable that the balance could be struck in favor of using the statement as evidence *if* the government offered a reasonably satisfactory explanation for not producing Logergren at the hearing. As we said in *Bell:* "[W]here the government demonstrates that the burden of producing live testimony would be inordinate *and* offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause." 785 F.2d at 643 (emphasis supplied). The government, however, has not come close to showing that it was undesirable or impractical to produce Logergren for live testimony. We conclude, therefore, that there was not "good cause" for not allowing Zentgraf the right of confrontation of Logergren at the revocation hearing. Requirement (D) of Rule 32.1(a)(2) was violated.

### (E) Other Evidence

██ There was evidence, other than Logergren's hearsay statement, connecting Zentgraf to the Woodland Spur store burglary. This other evidence, detailed above in Part I, would be legally sufficient to permit the district court, as finder of fact, to find by a preponderance of the evidence that Zentgraf violated his probation by committing the Woodland Spur burglary. Also, it is undisputed that Zentgraf violated the terms of his probation by associating with Logergren, a convicted felon. We do not know, however, what the district court's findings on the burglary would have been if it had not considered Logergren's statement, or if it had heard Logergren testify live on direct and cross-examination under oath. We also do not know what the district court would have done by way of disposition if it had found association with a convicted felon to be the only violation proved. Therefore, we must vacate the judgment and remand for further proceedings.

---

1. The government does not argue that it would have been too difficult and expensive to produce Logergren because he had been mistakenly moved to South Dakota. Such an argument would not be persuasive because Logergren was still in federal custody and only 300 miles away.

## IV. REMAND

We vacate the judgment revoking Zentgraf's supervised release and sentencing him to imprisonment and remand to the district court in order for it to reopen the revocation hearing, at which the government shall have the opportunity to produce Logergren as a live witness or show good cause for not producing him. The district court may consider all of the evidence received in the original revocation hearing, except Logergren's hearsay statement shall not be considered unless good cause for not producing Logergren is established. Because Zentgraf has already served a considerable portion of his twenty-one month sentence, the hearing should be reopened as soon as reasonably possible. The district court shall then make new findings and enter a new decision.

Vacated and remanded with instructions.