**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eric REYNOLDS, Defendant–Appellant.**

No. 94–3307.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1995.

Decided March 1, 1995.

Ilene A. Goodman, Federal Public Defender, St. Louis, MO, for appellant.

Steven Alan Muchnick, Asst. U.S. Atty., St. Louis, MO, for appellee.

Before Richard S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

Eric Reynolds appeals from the revocation of his period of supervised release. The district court committed him to the custody of the United States Bureau of Prisons for ten months after a final revocation hearing at which he claims hearsay evidence was improperly admitted in violation of his right to confrontation. We remand with instructions.

Reynolds was before the district court several times after entering on supervised release.[1] Near the end of 1993 he consented to a modification of release conditions requiring participation in a drug treatment program. Thereafter he entered such a program at the Southeast Missouri Community Center in Farmington, Missouri. Upon entry he acknowledged in writing that he was familiar with the center rules. Violation of the center rules was explained to be grounds for discharge, as was "inappropriate" behavior, and the rules included a ban on sexual activity.

In April 1994, the government requested revocation of Reynolds's supervised release because of alleged violations. The court did not then revoke, but modified his conditions to require residence and participation in "an in-patient drug treatment program of a community correction center, as instructed, until discharged by the center director; said discharge shall not be more than 120 days after admission." Order, May 26, 1994. On June 13 appellant was again admitted to the Farmington facility.

On or about August 3, 1994, Reynolds was discharged from the center by Charles Sut-

---

1. He was originally sentenced to twelve months incarceration and two years supervised release for conspiracy to alter and to pass an altered United States Postal Service money order, in violation of 18 U.S.C. §§ 500 & 2.

ton, federal programs coordinator at the facility. Shortly thereafter the government filed a second petition for revocation of supervised release on the ground that Reynolds's discharge violated the condition that he participate in a drug treatment program as instructed. The petition alleged that Reynolds had propositioned and threatened female residents, committed sexual assault, indecently exposed himself, and that his "generally disruptive" behavior interfered with the security and orderly running of the facility. A final revocation hearing was held on September 1, at which the government called three witnesses.

Sutton testified that he made the decision to discharge Reynolds in late July after conducting an investigation triggered by a complaint he had received about Reynolds. Over objection Sutton testified that a patient had written to complain that Reynolds had fondled her and exposed himself to her on a bus during a field trip away from the center. Sutton interviewed the alleged victim and two patients she identified as witnesses. One witness told Sutton he had not seen Reynolds assault the complainant but had seen him fondle a second patient; that patient confirmed it. On August 2, another woman in the program complained to Sutton about Reynolds. A potential witness to that complaint told Sutton that she had not seen the incident, but that Reynolds had fondled her.

Reynolds objected to Sutton's testimony as hearsay. The court overruled the objection on the basis that the testimony was likely offered to explain why Sutton undertook the investigation and made his discharge decision, not to prove that Reynolds had committed the sexual acts alleged. During Sutton's testimony Reynolds raised a question of confidentiality, pointing out that federal law prohibited the parties from revealing the alleged victims' names without their consent.[2] No patients' names were revealed in the testimony, but a signed letter from one complainant was put into evidence.

The government's other witnesses were Farmington employee Michelle Cresswell and Thomas Caruso. Cresswell testified that Reynolds had been disruptive during group treatment sessions and that he had once asked her for a kiss; she took the request as a joke. Caruso testified he had requested revocation of supervised release because Reynolds's disruptive behavior indicated he was not amenable to supervision.

Reynolds then produced several witnesses who also testified about out of court statements. The government raised a hearsay objection to the evidence, and counsel for Reynolds responded that she agreed it was hearsay but that it should come in since the government's hearsay had been received. A former employee at the treatment center testified that he saw the original complainant and Reynolds argue at a volleyball tournament several weeks before Sutton received the first complaint. A second employee testified that she had never observed Reynolds act inappropriately. Tom Hinton, an investigator for the federal public defender, testified that he had interviewed several Farmington patients. One told him she had also witnessed the argument at the volleyball tournament and that the original complainant later stated she could arrange to "get" Reynolds. The witness also told Hinton that she sat behind Reynolds on the bus during the field trip and did not see him engage in inappropriate sexual behavior then or at any other time, but another patient told her that she had seen Reynolds and a different patient engage in sexual activity on the bus.

At the conclusion of the testimony the district court found Reynolds in violation of the supervised release condition requiring participation as instructed in a treatment program. The court stated that Sutton had investigated the allegations of sexual activity and had determined that they were sufficiently credible, that Reynolds's conduct had been disruptive, and that no evidence suggested Sutton's investigation had been care-

2. A participant in a federal drug rehabilitation program is entitled to confidentiality. 42 U.S.C. § 290dd–2. Disclosure of a patient's identity without her written consent is limited to certain unusual and exigent circumstances which the parties agree do not apply here. *See* 42 U.S.C. §§ 251–261.

less or that he had shown poor judgment in discharging Reynolds.

 The standard for admitting hearsay in a revocation hearing is different than at trial on the merits. The federal rules of evidence do not apply, but rules of criminal procedure afford a defendant the opportunity to "question adverse witnesses" at the hearing. Fed.R.Crim.P. 32.1(a)(2)(D); Fed. R.Evid. 1101(d)(3). Whether a witness at the hearing may repeat out of court statements of others depends upon the balance of circumstances. The defendant does not lose all confrontation rights. Indeed, the trial court must balance the defendant's constitutional right to confront a witness against any governmental explanation for "why confrontation is undesirable or impractical." *United States v. Bell,* 785 F.2d 640, 643 (8th Cir.1986); *see also United States v. Zentgraf,* 20 F.3d 906, 909 (8th Cir.1994). It must also consider the reliability of the evidence offered in place of live testimony. *Bell* at 643. The outcome will vary depending upon the particular situation:

> where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

*Id.*

 Although the district court stated that it was admitting the challenged evidence for the limited purpose of showing why Sutton took certain actions, it explicitly relied on the thoroughness of Sutton's investigation and his determination that there was "sufficient credibility" to the complaints in concluding that a release condition had been violated. Since the hearsay evidence was in conflict, it appears that the court made some judgment as to the truth of the out of court allegations about Reynolds.

The government argues that even if the evidence was hearsay, it is admissible under *United States v. Bell* because of its inability to produce program participants to testify in light of the confidentiality regulations. Reynolds objects that the government did not show that confidentiality requirements prevented procuring the live testimony of any complainant.

The district court never reached these issues or balanced Reynolds's right to confrontation against the government's asserted reason for not calling any complainant. It did not explicitly discuss whether the challenged evidence bore any indicia of reliability. Since it had the opportunity to observe the various witnesses who did testify, it is appropriate that the case be remanded so that it may undertake the inquiry called for by *United States v. Bell.* See *United States v. O'Meara,* 33 F.3d 20 (8th Cir.1994).

Accordingly, we vacate the judgment revoking Reynolds's supervised release and sentencing him to imprisonment and remand to the district court so that it may reopen the revocation hearing consistent with this opinion, after which it shall make new findings and enter a new decision. *See id.; United States v. Zentgraf,* 20 F.3d 906.