**UNITED STATES of America, Petitioner,**

v.

**Wendell WOODS, Respondent.**

**Civil No. 4–87–553.**

United States District Court,
D. Minnesota,
Fourth Division.

June 27, 1997.

Friedrich Siekert, Assistant U.S. Attorney, Minneapolis, MN, for Petitioner.

Andrew Mohring, U.S. Public Defenders Office, Minneapolis, MN, for Respondent.

## ORDER

DAVIS, District Judge.

This matter is before the Court upon Respondent's objections to United States Magistrate John M. Mason's Report and Recommendation dated January 6, 1997 granting the Petitioner's Motion for Revocation of Conditional Discharge and for Placement at FMC–Rochester and Amended Petition for Revocation of Conditional Release.

Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review of the files, records and submissions of counsel, the Court ADOPTS the Report and Recommendation.

Accordingly, IT IS HEREBY ORDERED THAT the Petitioner's Motion for Revocation of Conditional Discharge and for Placement at FMC–Rochester [Docket No. 49] and Amended Petition for Revocation of Conditional Release [Docket No. 54] is granted. The Petitioner is remanded to the custody of the Attorney General for hospitalization at FMC–Rochester.

## REPORT AND RECOMMENDATION

MASON, United States Magistrate Judge.

### INTRODUCTION

The Respondent Wendell Woods was originally committed for hospitalization pursuant to 18 U.S.C. § 4246(d) in 1987. He was discharged subject to conditions in March 1994, pursuant to 18 U.S.C. § 4246(e)(2)(A) and (B). This matter came before the Court on November 5, 1996 and December 19, 1996 for hearing on Petitioner's (1) Motion for Revocation of Conditional Discharge and for Placement at the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester") [Docket No. 49] and (2) Amended Petition for Revocation of Conditional Release Granted Pursuant to 18 U.S.C. § 4246 [Docket No. 54].

Friedrich Siekert, Esq., appeared on behalf of the United States of America; Andrew Mohring, Esq., appeared on behalf of Wendell Woods, who was personally present at both of the evidentiary hearings. To revoke a person's conditional release, the government must show that the Respondent violated the terms of his conditional release, and that he poses "a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(f). The first hearing addressed whether Respondent violated the terms of his conditional release, and the second hearing focused on whether Respondent poses a danger to society. *See* Order and Memorandum (Nov. 6, 1996).

Based upon all of the files, records, and proceedings, the Court finds that Respondent has violated the terms of his conditional release by failing to comply with his prescribed regimen of medical, psychiatric, or psychological care or treatment. In particular, the Respondent left the Gateways Community Treatment Center of the Gateways Hospital and Mental Health Center in Los Angeles, California without permission on or about August 5, 1994 in direct violation of the court order granting Respondent's conditional release. The Court also finds that, "in light of his failure to comply with the prescribed regimen of medical, psychiatric or psychological care or treatment," his contin-

ued release would create "a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(f).

This Court recommends that the Petitioner's Motion for Revocation of Conditional Discharge and for Placement at FMC–Rochester [Docket No. 49] and Amended Petition for Revocation of Conditional Release Granted Pursuant to 18 U.S.C. § 4246 [Docket No. 54] be granted. The Respondent's conditional discharge granted in March 1994 should be revoked and the Respondent should remain committed for hospitalization at FMC–Rochester.

### FINDINGS OF FACT/REPORT

#### Applicable Law

##### *Procedure for Commitment*

Under federal law, a person whose sentence is about to expire may be committed for hospitalization pursuant to 18 U.S.C. § 4246(d). If the requirements of 18 U.S.C. § 4246(d) are met, the hospitalized person will remain in the custody of the United States even after the expiration of his sentence. That section, which requires the court to hold an evidentiary hearing, provides:

> "If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General."

18 U.S.C. § 4246(d).

Proceedings under 18 U.S.C. § 4246 are commenced when the director of a facility in which a person is hospitalized files a certificate with the clerk of court certifying that a person whose sentence is about to expire "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). The clerk of court is required to send a copy of

the certificate to the hospitalized person, and at the hearing to determine whether the person poses a "substantial risk" to society the person whose mental condition is the subject of the hearing is entitled to counsel. 18 U.S.C. § 4247(d). The person is also "afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." *Id.*

The Respondent was originally committed for hospitalization in September of 1987 pursuant to the provisions of 18 U.S.C. § 4246(a) and (d) after an evidentiary hearing was held on August 7, 1987. The Respondent was represented by counsel at that hearing [Docket No. 4].

### Procedure for Release

A person committed for hospitalization pursuant to 18 U.S.C. § 4246(d) may later be either unconditionally or conditionally released upon the government's initiative. This process is initiated when the director of the facility in which the person is hospitalized determines that the hospitalized person has recovered from his mental disease or defect to such an extent that his release—either with or without conditions—would no longer create a substantial risk to society. When that determination is made, the director of the facility files a certificate to that effect with the clerk of court. 18 U.S.C. § 4246(e). The court must then order the discharge of the hospitalized person or hold a hearing, conducted pursuant to 18 U.S.C. § 4247(d), to determine whether the person should be released. *Id.*

If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental illness to such an extent that his unconditional release would no longer create a substantial risk to persons or property, the court must order that the person be immediately and unconditionally discharged. 18 U.S.C. § 4246(e)(1). Likewise, if, after the hearing, the court finds by a preponderance of the evidence that the person's "conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," the court must order that the person be conditionally discharged under that prescribed treatment regimen. 18 U.S.C. § 4246(e)(2).

A hospitalized individual may also be released upon the motion of the legal guardian or counsel for the hospitalized person. Thus, 18 U.S.C. § 4247(h) permits the hospitalized person's counsel or legal guardian to file a motion "at any time during such person's hospitalization" for "a hearing to determine whether the person should be discharged" from the facility at which the mentally ill person is being hospitalized. 18 U.S.C. § 4247(h). However, no such motion may be filed within 180 days of a court determination that the person should continue to be hospitalized. *Id.*

In this case, the Respondent was conditionally released in March of 1994 [Docket No. 47] based upon the government's filing of a certificate with the clerk of court pursuant to 18 U.S.C. § 4246(e). That certificate stated that the clinical staff at FMC–Rochester believe that Respondent "can be safely released at this time under a specified regimen of psychiatric, psychological, and medical care pursuant to Title 18, United States Code, Section 4246(e)(2)." [Docket No. 46]

### Procedure for Revocation of Conditional Release

Once a conditional release has been granted, as it has been in this case, a district court may revoke the conditional discharge if two conditions are met. Those two conditions are set forth in 18 U.S.C. § 4246(f). First, a person must fail to comply with the conditions of his release, which include the duty to follow his prescribed treatment regimen. *See United States v. Woods,* 995 F.2d 894, 896 (9th Cir.1993). Second, "the court must conduct a hearing and determine whether in light of this failure the person's continued release would pose a risk to society." *Id.* The pertinent language of 18 U.S.C. § 4246(f) reads:

"The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with

the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another."

18 U.S.C. § 4246(f).

### Procedural History of Respondent's Commitment

On September 28, 1987, the Respondent was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246 [Docket No. 5]. The Respondent had been convicted of six counts of bank robbery in 1979, and his commitment to FMC–Rochester followed the expiration of his 12–year sentence for that crime. In ordering the commitment, then District Judge Diana Murphy adopted the Report and Recommendation of United States Magistrate Judge Bernard P. Becker, to which neither party objected [Docket No. 4]. Magistrate Judge Becker determined that Respondent had a mental disease or defect and found, by clear and convincing evidence, that Respondent "would pose a risk to others if he was released at this time." Although Magistrate Becker found that Respondent "does not appear to be dangerous so long as he takes his medication," Magistrate Becker emphasized that Respondent's "personal history reflects that he cannot be depended upon to take his medication voluntarily."

On December 1, 1987, the Respondent was conditionally released pursuant to 18 U.S.C. § 4246(e) [Docket No. 8]. Judge Murphy found that Respondent "has recovered from his mental disease or defect to such an extent that his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." Judge Murphy ordered that Respondent be conditionally discharged from hospitalization pursuant to the following conditions: (1) that Respondent "reside in a Community Treatment Center, Gateways, in Los Angeles, California," and (2) that he comply with an appropriately prescribed treatment regimen.

On March 30, 1990, the Respondent's conditional discharge was revoked by Judge Murphy [Docket No. 16]. Her order was based upon the Report and Recommendation of Magistrate Judge Becker, to which no objections were filed [Docket No. 15]. That Report and Recommendation found that the Respondent's failure to take his prescribed medication, coupled with his "history of violent, assaultive behavior while not taking medication," created a substantial risk of harm to persons or property, such that Respondent should be remanded to FMC–Rochester.

On November 7, 1990, Judge Murphy again ordered that the Respondent be released [Docket No. 20]. However, his release was made conditional on the acceptance of certain terms. The Respondent signed a document indicating that he understood that he was required to follow the conditions set out in Judge Murphy's conditional release order of December 3, 1990 [Docket No. 21]. On August 16, 1991, a federal district court in California revoked Respondent's conditional release, finding that Respondent violated one of the conditions of his release by consuming alcohol, thereby rendering him a danger to society. *Woods,* 995 F.2d at 895.

The United States Court of Appeals for the Ninth Circuit reversed that decision because appropriate medical professionals were not consulted in creating Respondent's treatment regimen. In its June 8, 1993 decision, the Ninth Circuit ordered the district court to determine on remand whether Respondent poses a threat to society. According to the Ninth Circuit's opinion:

"If so, he should be recommitted. However, if the court determines that Mr. Woods is sufficiently recovered, he should be conditionally discharged under a treatment program adopted by the district court. This treatment regimen will have to be developed in accordance with the dictates of the statute. This will require the district court to consult or retain medical experts, including the director of the Rochester facility. In addition, the district court should select a medical facility to administer the plan. If Mr. Woods violates the terms of his treatment regimen

his conditional release will be subject to revocation and he will risk recommitment." *Id.* at 897.

In declining to apply the mootness doctrine because "the proper construction of 18 U.S.C. § 4246 is an issue of continuing and public importance," the Ninth Circuit noted that Respondent's "current confinement is not due to the revocation order challenged in this action." *Id.* at 896. The Ninth Circuit emphasized: "At oral argument we were informed that following the district court's revocation order of August 1991, Mr. Woods was granted another conditional release. This release was revoked in September 1992." *Id.* The federal district court in California found in September of 1992 that Respondent's refusal to cooperate in taking his medicine rendered him a danger to himself and others [Docket No. 40].

On September 30, 1993, the federal district court in California transferred Respondent's case back to the District of Minnesota for the purpose of carrying out the Ninth Circuit's mandate. The California court noted that Respondent was then being incarcerated at FMC–Rochester, and that medical, psychiatric and psychological personnel familiar with Respondent and his course of treatment worked out of that facility [Docket No. 42].

Based upon a Certificate of Recovery and Request for Conditional Release from Hospitalization from the warden at FMC–Rochester, the parties' waiver of a hearing and their mutual assent to the entry of her Order, Judge Murphy ordered on March 16, 1994 that Respondent be conditionally released pursuant to 18 U.S.C. § 4246(e) [Docket No. 47]. In pertinent part, the following conditions of release were imposed by the Court: (1) that Petitioner reside at Gateways Community Treatment Center in Los Angeles, California and (2) that he comply with the prescribed regimen of medical, psychiatric, and psychological care and treatment set forth in the Certificate of Recovery.

On September 16, 1996, Petitioner moved for an order pursuant to 18 U.S.C. § 4246 for revocation of Respondent's conditional discharge and for the placement of Respondent at FMC–Rochester [Docket No. 49]. Petitioner alleges that Respondent failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment as set forth in the Order of Conditional Discharge entered by Judge Murphy in March of 1994. In particular, Petitioner alleges that, on August 5, 1994, Respondent left Gateways Community Treatment Center without permission and that Respondent was arrested on August 27, 1994 for bank robbery in Seattle, Washington. Petitioner alleges that Respondent was found not competent to stand trial on the bank robbery charges in the State of Washington, and that, because Respondent's continued release would pose a danger to society, Respondent's conditional release should be revoked pursuant to 18 U.S.C. § 4246(f).

On September 18, 1996, Petitioner filed its Amended Petition for Revocation of Conditional Release Granted Pursuant to 18 U.S.C. § 4246 [Docket No. 54]. In that Amended Petition, Petitioner (1) requested that the staff at FMC–Rochester conduct a psychiatric or psychological examination of Respondent to determine if his conditional release should be revoked, and (2) renewed the request that the Court revoke Respondent's conditional release of March 1994. On September 18, 1996, Petitioner also filed a Motion for Commitment and Examination Under 18 U.S.C. § 4247, requesting that Respondent be forced to undergo a mental health examination to determine his present mental state [Docket No. 56].

On October 7, 1996, this Court issued an Order denying without prejudice the Petitioner's Motion for Commitment and Examination [Docket No. 56]. *See* Docket No. 60 [944 F.Supp. 778 (D.Minn.1996)]. The Court ruled that it would not order a mental examination "until it has been made to appear at the revocation hearing that one is required." In addition, the Court ordered that an evidentiary hearing be held to determine whether Petitioner's Motion for Revocation of Conditional Discharge and for Placement at FMC–Rochester [Docket No. 49] and Amended Petition for Revocation of Conditional Release [Docket No. 54] should be granted. *See* Docket No. 60. By agreement of the parties, the issues of whether Respondent violated the terms of his release and

whether Respondent poses a danger to society were addressed at separate evidentiary hearings. *See* Docket No. 61. The Court took evidence regarding those two issues at the evidentiary hearings on November 5, 1996 and December 19, 1996. *See infra.*

## I. The Respondent Has Violated the Terms of His Conditional Release

The Respondent has violated the terms of his release by failing to follow his prescribed treatment regimen. The Stipulation signed by both parties' counsel and received into evidence at the first evidentiary hearing states that the Respondent was conditionally released from custody in March of 1994, pursuant to Judge Murphy's March 1994 Order. One of the conditions of that Order was that the Respondent reside at the Gateways Community Treatment Center in Los Angeles, California. It is undisputed that the Respondent left Gateways Community Treatment Center without permission on or about August 5, 1994. Respondent has violated Judge Murphy's order and his prescribed treatment regimen. *United States v. Poston,* 1992 WL 307863 (4th Cir. Oct.26, 1992) (unpublished op.) (there was no dispute whether the defendant violated the conditions of his release where the evidence was uncontroverted that the defendant left the state in violation of the terms of his release).

## II. The Respondent's Continued Release Would Create a Substantial Risk of Bodily Injury to Another Person or Serious Damage to Property of Another

### A. Standard of Proof

■ By its own terms, 18 U.S.C. § 4246(f) does not set forth the standard of proof required for revocation of a conditional release. This Court concludes that no heightened standard of proof is required for revocation of conditional discharge under 18 U.S.C. § 4246(f). Where Congress has intended a heightened standard, it has specifically provided for it, as it did in 18 U.S.C. § 4246(d). If the statute were construed to

require "clear and convincing evidence" of the failure to comply with conditions of release, and dangerousness, then a committed person could obtain unconditional release without meeting the requirements of 18 U.S.C. § 4246(e). This would be contrary to the public policy expressed in the statute.

The issue before the Court is not whether the Respondent should be committed. That decision has already been made on the basis of "clear and convincing evidence" that Respondent is mentally ill and dangerous. The issue also is not whether he has recovered, because no party has filed any pleadings nor submitted any evidence to establish that he has. The issue is simply whether, having been discharged on condition that he comply with his conditions of release and program of treatment, his discharge may now be revoked when he has failed to comply. In deciding this question under 18 U.S.C. § 4246(f), the Court may take into consideration the fact that it has already been determined by clear and convincing evidence that Respondent is mentally ill and dangerous, and in need of treatment. It may also take into consideration the fact that it is not claimed that Respondent has recovered.[1] Failure to abide by the conditions of release is itself also evidence of dangerousness. The evidentiary showing required to substantiate the grounds for revocation of discharge is thus substantially reduced.

Congress determined that, if a convicted person is found by clear and convincing evidence to be mentally ill and dangerous to others, that person can be committed for treatment. It also determined that such persons would be released only after a finding that they had recovered, and were no longer dangerous. The law also permits conditional release if the person has recovered to such an extent that by complying with a treatment program, the person would no longer be dangerous. It does not contemplate that persons could be released on condition that they comply with treatment programs, and then can obtain unconditional release by violating the conditions of their release, failing to ob-

---

1. Were that claim to be made, the Court would proceed pursuant to 18 U.S.C. § 4246(e). *See*   *also* 18 U.S.C. § 4247(h).

tain treatment, and then requiring the government to prove all over again by clear and convincing evidence that they are mentally ill and dangerous.

Construing the statute to require the government to prove dangerousness by clear and convincing evidence would not only create a risk to society, it would also serve as a deterrent to the conditional release of any committed person, since it would take from those responsible for the enforcement of the conditions of release the tools necessary to enforce those conditions. The assumption of all conditional discharges is that the discharged person will not be dangerous, but only if he or she follows the prescribed treatment program. It would be very difficult to conclude that the safety of society could be protected by a discharge with unenforceable conditions, since compliance with the conditions is an essential element insuring public safety.

Respondent argues that Section 4246(d) requires "clear and convincing evidence" in order to commit a person, and that Section 4246(e) permits release on a showing of recovery by "preponderance of the evidence." He concludes from this: "Release can be defeated only by clear and convincing evidence of dangerousness, whereas a mere preponderance of evidence of recovery requires the release of a previously committed individual."

This Court is not persuaded by this argument. It overlooks the critical distinction between the facts to be found in each circumstance. To commit a person, there must be "clear and convincing evidence" that the person is mentally ill and dangerous. 18 U.S.C. § 4246(d). To release a person, the finding is of a different kind. A person may be released only if the Court can find by a preponderance of the evidence that he has recovered and is no longer dangerous. 18 U.S.C. § 4246(e). It is true, as Respondent argues, that there is not "clear and convincing evidence" that, as a result of Respondent's failure to comply with the conditions of his release, "his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another." But it is also true that the Court could not find by a preponderance of the evidence (or *any* evidence) that Respondent "has recovered from his mental disease or defect" or that "his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," a finding which is required before a party may be released by Order of the Court. 18 U.S.C. § 4246(e).

## B. The Evidence

■ The evidentiary hearing was held on December 19, 1996 to determine whether, "in light of [Respondent's] failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, [Respondent's] continued release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(f). At that hearing, the Court heard testimony from Linda Berberoglu, Ph.D., a licensed psychologist at FMC–Rochester. *See* Gov't. Ex. 10.

The Court found Dr. Berberoglu to be a very credible witness. She has a Ph.D. in Counseling Psychology from the University of Iowa and she has been a staff psychologist at FMC–Rochester since 1992. Her duties at FMC–Rochester include the forensic assessment of dangerousness. She participates on FMC–Rochester's Risk Assessment Panel. The Risk Assessment Panel consists of three clinicians, who ordinarily review a patient's medical history, interview the patient, and then meet to discuss the patient's potential risk if released. As a member of the Risk Assessment Panel, Dr. Berberoglu has conducted numerous risk assessments.

In conducting the risk assessment of Respondent, the Risk Assessment Panel reviewed Respondent's medical history, including his central file and his medical records, and met to discuss his mental condition. The Risk Assessment Panel also heard from Respondent's treatment team, although Respondent himself refused to be interviewed. The three-member Risk Assessment Panel unanimously concluded that Respondent's continued release would pose a danger to others. This assessment was memorialized in a "Progress Note" for October 22, 1996, which states that Respondent is currently psychot-

ic, that he has repeatedly violated prescribed conditions of release, and that he has "a history of violent behavior both in the community and in institutions going back until the 1970's." In prior years, it is uncontested that the Respondent set fires in his cell and assaulted people. The October 22 note further states that Respondent's history of substance abuse and personality disorder complicate his condition and increase his risk for violence. Dr. Berberoglu testified at the hearing that Respondent suffers from schizoaffective disorder, a condition which is treated with psychotropic medications. *See United States v. Watson,* 893 F.2d 970, 975 n. 1 (8th Cir.) (although the term "schizoaffective disorder" is used in many ways, "[i]t is now categorized as a disturbance during which there is either an episode of major depression or manic syndrome concurrent with symptoms of schizophrenia"), *vacated in part on reh'g on other grounds, United States v. Holmes,* 900 F.2d 1322 (8th Cir.), *cert. denied, Watson v. United States,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990).

Dr. Berberoglu testified that, at least since September 1996, the Respondent has voluntarily taken his prescribed psychotropic medications and that the Respondent has not engaged in any aggressive or assaultive behavior. However, she stated that Respondent has a history of continually discontinuing drug treatment, and that when Respondent stops taking his medication, his condition deteriorates and the symptoms of his mental illness recur. Dr. Berberoglu opined that Respondent needs to be treated in a hospital at this time, although he has gotten progressively better recently and may be considered for outpatient treatment at a later date. She further testified that the best predictor of future behavior is past behavior, and that Respondent has a history of engaging in violent conduct.

Dr. Berberoglu's conclusions are supported by the record. Respondent should be remanded to the custody of the Attorney General for hospitalization. The Respondent was originally committed for hospitalization back in 1987 pursuant to 18 U.S.C. § 4246(d), when the finding was made by "clear and convincing evidence" that Respondent would pose a danger to society if released. Since that time, Respondent has been conditionally released on several occasions, only to have those conditional releases revoked because of his refusal to comply with his prescribed treatment regimen. Dr. Berberoglu has reasonably concluded that, if released, Respondent would pose a substantial risk of bodily injury to another person or serious damage to property of another because of his mental illness.

The Respondent's repeated failure to comply with his prescribed treatment regimen and to take his psychotropic medications when on conditional release, coupled with Respondent's prior history of violence and aggressive behavior when he fails to comply with that treatment regimen, makes Respondent's continued release a dangerous risk to society. Respondent's failure to abide by Judge Murphy's conditional release Order of March 1994 is evidence that Respondent poses a substantial risk of danger to society.

Based upon the foregoing, this Court concludes that Petitioner has met its burden of presenting evidence substantiating that Respondent has failed to comply with a treatment program and the conditions of his release. His continued release would create a substantial risk of danger to persons or property. Since Respondent has offered no evidence to the contrary, the Court is not called upon to balance these findings against that evidence. Accordingly, it is recommended that Respondent's conditional discharge be revoked.

If the District Court finds that further testimony is necessary to determine whether Respondent poses a substantial risk of harm to other persons or property, the Court recommends that the District Court order a mental health examination of the Respondent, following which additional testimony may be provided to this Court. *See* Order of October 7, 1996 [Docket No. 56].

### C. Evidentiary Issues

At the evidentiary hearing, the Court also admitted into evidence five government exhibits (Gov't. Exs. 10, 11, 11A, 11B, 12 & 13) over Respondent's objection on hearsay and

relevancy grounds. Pursuant to the procedural safeguards governing 18 U.S.C. § 4246 proceedings, the person whose mental condition is the subject of the hearing "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d). It is unclear whether this provision implicitly makes the Federal Rules of Evidence applicable to proceedings under 18 U.S.C. § 4246. *See United States v. Zannino,* 1985 WL 2305 at *4 n. 3 (D.Mass. June 5, 1985) (unpublished op.) ("[T]he Court is not persuaded by the defendant's contention that because reference is made in 18 U.S.C. § 4247(d) to presentation of evidence and cross-examination of witnesses, the Federal Rules of Evidence necessarily apply. Notwithstanding defendant's arguments, the statute is not trenchantly clear as to the applicability of the rules.").

Although the issue is not free from doubt, this Court finds that the Federal Rules of Evidence are applicable to this proceeding. The Federal Rules of Evidence are made applicable to all civil actions unless an exception applies, and no exception appears to apply here. *See* Fed.R.Evid. 101; Fed. R.Evid. 1101; *see also United States v. Phelps,* 955 F.2d 1258, 1264 (9th Cir.1992) (release hearings are considered civil in nature), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2977, 119 L.Ed.2d 595 (1992).

■■■■■ 11, 11A and 11B, which are a portion of Respondent's voluminous medical records, bear substantial indicia of reliability, and the Court had "good cause" for permitting their receipt into evidence. These three exhibits are admissible under the Federal Rules of Evidence as (1) statements of Respondent's then existing mental, emotional or physical condition, (2) statements for purposes of medical diagnosis or treatment, (3) records of regularly conducted activity, and (4) public records and reports. Fed.R.Evid. 803(3), (4), (6) & (8). Requiring Petitioner to produce all or most of the individuals referenced in those medical records would be unduly burdensome.

Even if these medical records were deemed inadmissible hearsay, Dr. Berberoglu reasonably relied upon these records in forming her opinion as to Respondent's future dangerousness. Fed.R.Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."); *Coleman v. Wilson,* 912 F.Supp. 1282, 1303 (E.D.Cal.1995) (Rule 703 authorized psychiatrists' and psychologist's testimony based upon review of medical records), *appeal dismissed,* 101 F.3d 705 (9th Cir.1996) (unpublished op.); *United States v. Bramlet,* 820 F.2d 851 (7th Cir.) (psychologist could predicate his opinion, that defendant was malingerer attempting to falsify his alleged insanity, upon recorded observations of hospital staff members whom the government did not call to testify), *cert. denied,* 484 U.S. 861, 108 S.Ct. 175, 98 L.Ed.2d 129 (1987); *Evanoff,* 10 F.3d at 560–61 & n. 4 ("Our review of the hearing testimony and of the written record, consisting mainly of second-hand summaries of Evanoff's mental health history, leads us to conclude that the district court did not abuse its discretion in finding clear and convincing evidence of Evanoff's dangerousness.").

The other two exhibits that Respondent objected to contain a variety of documents. Exhibit 12 consists of (1) some of Respondent's medical records, (2) a memorandum detailing the circumstances of Respondent's unauthorized departure from Gateways Community Treatment Center, (3) an arrest report for a bank robbery in Seattle, Washington, (4) government memoranda relating to the Washington bank robbery charges, and (5) an Order from a Washington state court finding the Respondent incompetent to stand trial on those charges. Exhibit 13 also contains copies of police reports related to the State of Washington bank robbery charges and a certified copy of the Information and Certification for Determination of Probable Cause, signed by a local prosecutor and dated August 31, 1994. That Information and

Certification was filed with the King County Superior Court in Seattle, Washington.

■ To the extent Exhibit 12 contains medical records, those records are admissible and were reasonably relied upon by Dr. Berberoglu in forming her expert opinion and should be included in the record for the reasons outlined above. As to the arrest report and all other documents relating to the bank robbery in Seattle, Washington, this Court is convinced by Respondent's argument that it was error to admit these documents. These documents contain inadmissible hearsay, no hearsay exception appears to apply, and the government offered no justification for why it could not offer admissible evidence at the hearing. *Cf. United States v. Evanoff,* 10 F.3d 559, 562 (8th Cir.1993) (inmate's case manager's testimony that Evanoff had allegedly placed a threatening telephone call to his ex–wife was found to be untrustworthy "fifth–hand hearsay" and "too untrustworthy to have served as any appreciable basis for a finding of dangerous" in an 18 U.S.C. § 4246 proceeding).

■ The improper admission of documents showing Respondent's alleged but unproved involvement in a bank robbery did not prejudice Respondent because the Court has disregarded those documents in reaching its conclusion. In reaching its decision, the Court has disregarded all evidence introduced to show that the Respondent robbed a bank in Seattle, Washington, and treats as unsubstantiated any claim that he did so. Had the United States Attorney introduced any of the apparently available admissible evidence to prove Respondent's involvement in the bank robbery, the Court's resolution of this case would be much easier. In particular, the District Court would not need to resolve the applicable standard of proof in 18 U.S.C. § 4246(f) proceedings because if participation in a bank robbery had been established, Respondent's dangerousness would have been proved by "clear and convincing evidence."

In concluding that the documents related to the alleged bank robbery are inadmissible and must be disregarded, this Court relies upon Federal Rule of Evidence 803(8), which specifically excludes police reports from the public records exception to the hearsay rule, and three Eighth Circuit cases cited by Respondent at the hearing. *See* Fed.R.Evid. 803(8). The three cases address the admissibility of hearsay testimony in probation/supervised release revocation proceedings. *See United States v. Bell,* 785 F.2d 640 (8th Cir.1986); *United States v. Zentgraf,* 20 F.3d 906 (8th Cir.1994); *United States v. Reynolds,* 49 F.3d 423 (8th Cir.1995). The Federal Rules of Evidence do not apply to probation/supervised release revocation proceedings. *Bell,* 785 F.2d at 643 n. 3 (citing Fed.R.Evid. 1101); *Reynolds,* 49 F.3d at 426 (*citing* Fed.R.Evid. 1101). However, those three Eighth Circuit cases address the Sixth Amendment right to confront and cross–examine witnesses at revocation hearings. They conclude that police reports and hearsay testimony regarding unsubstantiated criminal activities may not be admitted into evidence in revocation proceedings unless they have sufficient indicia of reliability.

In *Bell,* a probationer, Bruce Bell, argued that his Sixth Amendment right to confront and cross–examine witnesses against him at a probation revocation hearing was violated by the introduction of police reports of his arrest and a probation officer's testimony about the suspicions of the Arkansas State Police that Bell was involved in cocaine sales. *Bell,* 785 F.2d at 642. This challenge was based on U.S. Supreme Court authority, which holds that the Sixth Amendment affords parolees and probationers in revocation proceedings the right to confront and cross–examine adverse witnesses, unless the hearing officer finds "good cause" for not allowing confrontation. *Id.* (*citing Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) & *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973)). The Eighth Circuit held that it did not need to address whether the government had established "good cause" for the admissibility of the police reports because "Bell's own admissions sufficiently corroborate the police reports to make it clear that they were indeed reliable." *Bell,* 785 F.2d at 644. The *Bell* court emphasized, though, that police reports of Bell's arrest do not bear the same "indicia of relia-

bility" as laboratory reports, noting that "[t]he relationship between police officers and those whom they arrest" is rather "personal and adversarial in nature." *Id.* at 643–44. The *Bell* court also found that the probation officer's testimony about the suspicions of Bell's involvement in cocaine sales was not "sufficiently reliable" because "[t]here was no showing whatever that producing the live testimony of the police officers involved would have presented any significant difficulty." *Id.* at 644–45.

Unlike the situation in *Bell,* the Respondent, who did not testify at the evidentiary hearing, has made no admissions which would corroborate the police reports regarding the bank robbery. In addition, the Petitioner in this case has offered no explanation for why it decided not to produce live testimony or otherwise admissible evidence, such as a videotape of the bank robbery, to corroborate the documents regarding the alleged bank robbery. Consequently, these documents do not bear sufficient indicia of reliability to permit their receipt into evidence. *Bell,* 785 F.2d at 643–44; *see also Zentgraf,* 20 F.3d at 907–10 (receipt into evidence in supervised release proceeding, over hearsay objection, of confession and police report implicating Timothy Zentgraf in criminal activity violated Zentgraf's confrontation clause rights where the district court judge "did not, either during the hearing or in his written findings and conclusions filed after the hearing, assess the explanation of the government for not producing" live testimony at the hearing); *Reynolds,* 49 F.3d at 424–26 (admission of hearsay evidence in revocation proceeding about defendant's fondling of two complainants violated defendant's right to confrontation, where the district court never "balanced Reynold's right to confrontation against the government's asserted reason for not calling any complainant").

## RECOMMENDATION

For the foregoing reasons, and based upon all of the records, files and proceedings herein,

IT IS HEREBY RECOMMENDED THAT:

1. The Petitioner's Motion for Revocation of Conditional Discharge and for Placement at FMC–Rochester [Docket No. 49] and Amended Petition for Revocation of Conditional Release [Docket No. 54] be granted; and

2. The Petitioner be remanded to the custody of the Attorney General for hospitalization at FMC–Rochester.

DATED: Jan. 6, 1997

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by January 21, 1997, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearings in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearings by January 21, 1997.